**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| EMHART INDUSTRIES, INC., | |
| Plaintiff, | Civil Action No. _____ |
| v. | **CA11- 023S** |
| UNITED STATES DEPARTMENT OF THE AIR FORCE; UNITED STATES DEPARTMENT OF THE NAVY; UNITED STATES DEPARTMENT OF DEFENSE; MICHAEL B. DONLEY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF THE AIR FORCE; RAY MABUS, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF THE NAVY; ROBERT M. GATES, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE; AND THE UNITED STATES OF AMERICA | |
| Defendants. | |

**COMPLAINT**

Plaintiff Emhart Industries, Inc. ("Emhart") brings this action against Defendants United States Department of the Air Force ("Air Force"), United States Department of the Navy ("Navy"), United States Department of Defense ("DOD"), Michael B. Donley in his official capacity as Secretary of the United States Department of the Air Force, Ray Mabus in his official capacity as Secretary of the United States Department of the Navy, Robert M. Gates in his official capacity as Secretary of the United States Department of Defense, and the United States of America (collectively, "Defendants") for damages and declaratory judgment with respect to

dioxin contamination alleged to be the responsibility of Emhart at the Centredale Manor Superfund Site in North Providence, Rhode Island (the "Site"). Emhart claims, in this action, that Defendants are responsible for the alleged dioxin contamination at the Site.

### Parties

1. Emhart was a Connecticut corporation and was dissolved on February 28, 2002 under Connecticut law, including the provisions now codified in Sections 33-886 and 33-887 of the Connecticut General Statutes; Emhart has the legal capacity to bring this suit.

2. Defendant Navy is a department, agency, and/or instrumentality of the United States, empowered by Congress to sue and be sued in its own name.

3. Defendant Air Force is a department, agency, and/or instrumentality of the United States, empowered by Congress to sue and be sued in its own name.

4. Defendant DOD is a cabinet level department, agency, and/or instrumentality of the United States, it controls the Navy and the Air Force, and it is empowered by Congress to sue and be sued in its own name.

5. Robert M. Gates is the Secretary of the United States Department of Defense; as such, he controls the operations and activities of that Department. He is sued in his official capacity.

6. Michael B. Donley is the Secretary of the United States Department of the Air Force; as such, he controls the operations and activities of that Department. He is sued in his official capacity.

7. Ray Mabus is the Secretary of the United States Department of the Navy; as such, he controls the operations and activities of that Department. He is sued in his official capacity.

8.  Defendant United States of America controls the above listed Defendants and may sue and be sued in its own name.

## Jurisdiction

9.  This Court has subject matter jurisdiction over the claims asserted in Counts I, II, and III pursuant to 42 U.S.C. § 9613(b) in that said claims arise out of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and pursuant to 28 U.S.C. § 1331 in that said claims arise under the laws of the United States.

10. This Court has supplemental jurisdiction of the claim alleged in Count IV pursuant to 28 U.S.C. § 1367 in that said claim is so related to the claims within this Court's original jurisdiction that it forms a part of the same case or controversy under Article III of the United States Constitution.

11. This Court has subject matter jurisdiction over the claims for declaratory relief pursuant to 28 U.S.C. § 2201 and/or 42 U.S.C. § 9613(g)(2).

12. Venue lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 9613(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this District, and the releases or threatened releases of hazardous substances occurred in this District.

13. Pursuant to 42 U.S.C. § 9620(a)(1), Defendants each have waived sovereign immunity with respect to the claims in this action.

14. A copy of this Complaint will be provided to the Attorney General of the United States and to the Administrator of the United States Environmental Protection Agency (the "EPA") in accordance with 42 U.S.C. § 9613(l).

## Facts

### A. The Site

15. EPA has defined the Site as consisting of two parcels of land, 2072 and 2074 Smith Street in North Providence, Rhode Island, as well as adjacent portions of the Woonasquatucket River and its floodplain. The Site includes Allendale Pond, Lyman Mill Pond, and other areas.

16. On February 28, 2000, EPA issued to Emhart a Notice of Potential Liability with respect to the Site. In said Notice of Potential Liability, EPA demanded that Emhart remediate the Site and reimburse EPA for "response" costs, within the meaning of 42 U.S.C. § 9601(25), incurred by EPA in connection with the Site.

17. On March 6, 2000, the Site was placed on the National Priorities List, pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a).

18. EPA has alleged that Emhart is successor to Metro-Atlantic, Inc. ("Metro-Atlantic"), and that a hexachlorophene plant that Metro-Atlantic operated at the Site for a period of less than one year in or about 1964 released 2,3,7,8-TCDD and other dioxins to the Site. Emhart denies these allegations.

19. EPA has alleged that Metro-Atlantic and New England Container Company ("NECC")—which operated a facility for reconditioning steel drums on a portion of the Site from approximately 1952 until the early 1970's—were "operators" of "facilities" at the Site.

20. EPA has issued a number of orders requiring Emhart to expend funds to implement certain removal actions, and other actions to cleanup and/or remediate the Site.

21. Emhart has incurred substantial costs in complying with these requests.

22. EPA has not issued a Record of Decision describing the ultimate remediation of the Site.

23.     Emhart is informed and believes, and therefore avers, that once the Record of Decision is issued, EPA will demand that Emhart undertake additional remedial work at the Site potentially costing hundreds of millions of dollars.

24.     On September 20, 2007, EPA issued to the Department of the Air Force a Notice of Potential Liability pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), relating to the Site.

25.     On August 7, 2007, EPA issued to the Department of the Navy a Notice of Potential Liability pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), relating to the Site.

26.     Emhart is informed and believes and therefore avers that Defendants have not assumed their responsibilities for contamination of the Site.

**B.     Defendants Caused the 2,3,7,8-TCDD and Other Contamination at the Site**

27.     In the course of its operations, NECC received drums for reconditioning from Quonset Naval Base ("Quonset") and Otis Air Force Base ("Otis"), among others.

28.     In the 1960's, NECC received at least 4800 drums from Quonset and Otis.

29.     Emhart is informed and believes, and therefore avers, that these and other drums received by NECC from Quonset and Otis contained chemical substances including tactical military herbicides containing 2,3,7,8-TCDD dioxin.

30.     NECC reconditioned drums by incineration and by washing. In the course of its operations, the contents of drums were spilled and leaked on the Site and products of combustion were deposited on the Site. Hazardous substances, including substances in drums received from Quonset and Otis, were released as a result of NECC's operations.

31.     Emhart is informed and believes, and therefore avers, that the actions of NECC in incinerating and washing drums, as part of the reconditioning process, resulted in the "release"

into the "environment," within the meanings of 42 U.S.C. §§ 9601(8) and 9601(22), of various hazardous substances, including 2,3,7,8-TCDD dioxin, that came from Defendants.

32. Among other hazardous substances so released on the Site were 2,4,5-Trichlorophenoxyacetic acid ("2,4,5-T") and 2-(2,4,5-trichlorophenoxy)propionic acid ("2,4,5-TP"), a herbicide known as "Silvex." The 2,4,5-T and Silvex detected on the Site are co-located with high concentrations of 2,3,7,8-TCDD dioxin.

33. The 2,4,5-T and Silvex used at the time of NECC's operations at the Site contained 2,3,7,8-TCDD dioxin.

34. The 2,4,5-T and Silvex detected on the Site were not generated or used by Metro-Atlantic.

35. The substances 2,4,5-T and Silvex do not have any substantial domestic uses. Emhart is informed and believes, and therefore avers, that Defendants are the only sources of these substances that have been released on the Site.

36. Given the relatively short half lives of 2,4,5-T and Silvex, among other things, the discovery of these contaminants at detectable levels on the Site, decades after the cessation of NECC's steel drum reclamation operations, indicates that large quantities of these contaminants, which contained 2,3,7,8-TCDD, were released on the Site as a result of delivery of steel drums to the Site from Quonset and Otis.

37. Emhart is informed and believes, and therefore avers, that during the 1960's, a number of tactical military herbicides were used at Quonset and Otis, including 2,4,5-T, Silvex, 2,4-D, and Methylchlorophenoxypropionic acid ("MCPP").

38. Emhart is informed and believes, and therefore avers, that steel drums containing those substances were delivered to the Site from Quonset and Otis.

39. Emhart is informed and believes and therefore avers that 2,4,5-T and Silvex delivered to the Site from Quonset and Otis were the cause of the 2,3,7,8-TCDD dioxin contamination that has been detected at the Site.

40. Emhart denies that it is responsible for any of the 2,3,7,8-TCDD dioxin contamination that has been detected at the Site.

## COUNT I
### Cost Recovery under CERCLA – All Defendants

41. Emhart incorporates the allegations contained in paragraphs 1 through 40 of the Complaint, as if set forth in full herein.

42. Emhart is informed and believes, and therefore avers, that the Site constitutes a "facility" or "facilities" within the meaning of 42 U.S.C. § 9601(9).

43. Emhart is informed and believes, and therefore avers, that Defendants by contract, agreement, or otherwise arranged with NECC for disposal or treatment, or transport for disposal or treatment, of hazardous substances owned or possessed by Defendants.

44. Emhart is informed and believes, and therefore avers, that these "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), that were once owned by Defendants were released upon the Site.

45. The aforesaid releases or threatened releases of hazardous substances at the Site have caused Emhart, pursuant to the demand at EPA, to incur "response" costs within the meaning of 42 U.S.C. § 9601(25).

46. Emhart is informed and believes, and therefore avers, that EPA will in the future demand that it incur additional response costs

47. Pursuant to 42 U.S.C § 9607(a), Emhart is entitled to recover from Defendants the response costs that it has incurred in connection with the Site, plus interest.

## COUNT II
### Contribution under CERCLA – All Defendants

48. Emhart incorporates the allegations contained in paragraphs 1 through 47 of the Complaint, as if set forth in full herein.

49. Emhart is informed and believes, and therefore avers, that an administrative civil action pursuant to 42 U.S.C. § 9606 is presently pending against Emhart.

50. Emhart is informed and believes, and therefore avers, that Defendants by contract, agreement, or otherwise arranged with NECC for disposal or treatment, or transport for disposal or treatment, of hazardous substances owned or possessed by Defendants.

51. Emhart is informed and believes, and therefore avers, that these "hazardous substances," within the meaning of 42 U.S.C. §§ 9601(14), that were once owned by Defendants were released upon the Site.

52. The aforesaid releases or threatened releases of hazardous substances at the Site have caused Emhart, pursuant to the demand at EPA, to incur "response" costs within the meaning of 42 U.S.C. § 9601(25).

53. Emhart is informed and believes, and therefore avers, that EPA will in the future demand that it incur additional response costs

54. In the event that Emhart is found to have contributed to contamination at the Site, Defendants are liable to Emhart for Defendants' proportionate shares of all response costs incurred or to be incurred by Emhart in connection with the Site pursuant to 42 U.S.C. § 9613(f)(1).

## COUNT III
### Divisibility – All Defendants

55. Emhart incorporates the allegations contained in paragraphs 1 through 54 of the Complaint, as if set forth in full herein.

56. In the event that Emhart is found to have contributed to the contamination at the Site, the contamination at the Site is divisible and Emhart is responsible for no more that its divisible share of the contamination at the Site.

## COUNT IV
### Equitable Indemnity – All Defendants

57. Emhart incorporates the allegations contained in paragraphs 1 through 56 of the Complaint, as if set forth in full herein.

58. Emhart is informed and believes, and therefore avers, that Defendants by contract, agreement, or otherwise arranged with NECC for disposal or treatment at the Site, or transport for disposal or treatment at the Site, of hazardous substances owned or possessed by Defendants.

59. EPA issued orders concluding that Emhart is a "liable party" within the meaning of 42 U.S.C. § 9607. As result of said orders, Emhart has paid "response" costs within the meaning of 42 U.S.C. § 9601(25).

60. EPA issued orders concluding that the Navy and the Air Force are each liable parties within the meaning of 42 U.S.C. § 9607, and that the Navy and the Air Force are liable for "response" costs within the meaning of 42 U.S.C. § 9601(25).

61. All Defendants are liable for "response" costs.

62. Defendants are liable for response costs incurred by Emhart and that in the future may be incurred by Emhart.

63. Emhart is entitled to indemnification from Defendants.

## COUNT V
### Declaratory Judgment – All Defendants

64. Emhart incorporates the allegations contained in paragraphs 1 through 63 of the Complaint, as if set forth in full herein.

65. There is a case or controversy between Emhart and Defendants concerning the nature and extent of the obligation of Defendants to pay for anticipated future response costs with respect to the Site.

66. Emhart is entitled to a declaration that Defendants are liable to Emhart for the costs that EPA has demanded and will in the future demand that Emhart pay with respect to the Site, as claimed herein.

### Prayer for Relief

WHEREFORE, plaintiff Emhart Industries, Inc. prays that this Court:

A. Award Emhart Industries, Inc. the damages to which it is entitled as a result of the conduct of Defendants, including but not limited to response costs, costs of remedial or removal actions, costs of containment, cleanup, restoration, and removal of the hazardous wastes and attorneys' fees, that Emhart Industries, Inc. has incurred to date and will incur in connection with the Centredale Manor Superfund Site, plus interest, costs and attorneys' fees;

B. Enter a declaratory judgment that Defendants are liable for all costs, including but not limited to, response costs, costs of remedial or removal actions, costs of containment, cleanup, restoration, and removal of the hazardous wastes and attorneys' fees that EPA will demand Emhart Industries, Inc. to incur in connection with the Centredale Manor Superfund Site;

C. Award Emhart Industries, Inc. such other and further relief as the Court deems just and proper.

## Jury Demand

Emhart demands a trial by jury of all issues so triable.

Respectfully submitted,
EMHART INDUSTRIES, INC.

By its attorneys,

*/s/ Rachelle R. Green*

Rachelle R. Green, Esq. (#5870)
DUFFY & SWEENEY, LTD.
1800 Financial Plaza
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

OF COUNSEL:
Jack R. Pirozzolo, Esq.
Foley Hoag LLP
155 Seaport Boulevard
Boston, Ma 02210
(617) 832-1000
(617) 832-7000 (facsimile)
jpirozzolo@foleyhoag.com

4847-8109-7992, v. 1